## GEORGE DOZIER v. THE STATE.

### No. 1077.    Decided May 3, 1911.

**1.—Occupation—Selling Intoxicating Liquors—Local Option—Continuance.**

Where, upon appeal, the record showed no bill of exceptions to the action of the court in overruling a motion for continuance, the same could not be considered; besides the record showed no diligence, and that the testimony of the absent witness was simply cumulative and of an impeaching character.

**2.—Same—Indictment—Precedent.**

Where the indictment was drawn according to precedent there was no error in overruling a motion to quash. Following Mizell v. State, 59 Texas Crim. Rep., 226.

**3.—Same—Statutes Construed—Extent of Law.**

The law making it an offense to pursue the occupation or business of selling intoxicating liquors in local option territory is in force and effect in all parts of the State where local option has been adopted, regardless as to when it was adopted, before or after said law took effect. Distinguishing Lewis v. State, 58 Texas Crim. Rep., 351. Davidson, Presiding Judge, dissenting.

**4.—Same—Constitutional Law—Statutes Construed.**

The Constitution of Texas provides that the Legislature shall pass a law that the people may from time to time pass on the question of whether or not the sale of intoxicating liquors shall be prohibited in certain territory, and when they declare that it shall be prohibited, it is the duty of the Legislature to pass laws to make their will effective.

**5.—Same—Charge of Court—Local Option in Force.**

Where the orders of the Commissioners' Court with reference to the local option election, publication of its results, etc., are introduced in evidence, the court should charge the jury that local option is in force, and there is no merit in the contention that the court gave the jury no rule by which to determine whether local option was in force.

**6.—Same—Charge of Court—Occupation.**

Where, upon trial of unlawfully selling intoxicating liquors as an occupation in local option territory, the court properly instructed the jury as to the definition of occupation and business, and the defendant requested no special instruction on this issue, there was no error.

**7.—Same—Charge of Court—Sacramental Purposes.**

Where, upon trial of unlawfully pursuing the occupation of selling intoxicating liquors in local option territory, there was no evidence in the record that any of the sales proved to have been made by the defendant was for sacramental purposes or on the prescription of a physician, there was no error in the court's refusal and failure to charge on this matter.

**8.—Same—Exceptions—Negative.**

Under the law providing for the punishment of persons who unlawfully pursue the occupation of selling intoxicating liquors in local option territory, it is not necessary to negative the exceptions of the statute, but even if it were it is not necessary to prove that these exceptions did not exist, as this is a matter of defense and incumbent on the defendant to prove. Davidson, Presiding Judge, dissenting.

Appeal from the District Court of Red River. Tried below before the Hon. Ben H. Denton.

Appeal from a conviction of unlawfully carrying on the occupation

of selling intoxicating liquors in local option territory; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane*, Assistant Attorney-General, for the State.

HARPER, JUDGE.—In this case appellant was indicted for pursuing the occupation of selling intoxicating liquors in Red River County, a county where local option had been adopted. Upon a trial he was adjudged guilty, and his punishment assessed at five years confinement in the penitentiary.

The evidence in this case, from the State's view, shows that defendant on several occasions was going about over the country with whisky in a sack in pint bottles, selling it at eighty cents a pint. He is shown to have made sales to about ten different persons. One witness testified that defendant agreed to bring them whisky every second Saturday if they would buy as much as a case. He was to deliver it in the woods between the Igo place and Dan Duty's place. Some of the witnesses testify to buying whisky from defendant on different occasions at different places. If the jury believed these witnesses, this would make him guilty of pursuing the occupation or business of selling intoxicating liquors.

There are no bills of exception in the record. The attorney who appeared before this court in behalf of defendant stated that the attorney who represented defendant in the trial court died before completing the record. This is unfortunate, but we can not consider a number of the assignments in the absence of bills of exception approved by the trial judge.

There is an application for a continuance in the record, but as before stated, there is no bill of exceptions in the record to the action of the court in overruling it. There is no process attached to the application showing what, if any, diligence was used to obtain the witnesses. The indictment was returned into court on June 10th, and the defendant was not tried until the 27th. It is stated that one of the witnesses would testify that defendant was a farmer. This would only be cumulative of other testimony in the record. In addition, this would not prevent him being also a peddler of whisky on Saturdays and Sundays, as testified to by witnesses. The facts he states he expects to prove by the other witness would only tend to impeach one of the State's witnesses and leave the evidence of the other nine or ten who testified they bought whisky from him unimpaired. There was no error in the court overruling the motion, viewed in the light of the record.

The indictment is drawn in accordance with the decision of this court in Mizell v. State, 59 Texas Crim. Rep., 226, 128 S. W. Rep.,

125, and held valid in several cases since then. See also the case of ·Slack v. State and other cases decided at this term of the court.

The contention is also made that local option having been adopted prior to the enactment of this law by the Legislature, that it is not in force in Red River County. In Slack v. State, decided at this term of the court, we approved the holding in the case of Fitch v. State, 58 Texas Crim. Rep., 356, 127 S. W. Rep., 1040, and held that the law making it an offense to pursue the occupation or business of selling intoxicating liquors is in effect in all parts of the State where prohibition has been adopted. The attorney in this case insists that there is an irreconcilable conflict in the Lewis case and in the Fitch case, and one or the other should be overruled. As said by us in the Slack case, we did not think it necessary to discuss the Lewis case, only to say that the doctrine in that case would be limited to a single sale. Insofar as it is sought to make it a precedent preventing the Legislature from adopting other remedial measures to cure evils as they arise, we would not follow it. Whenever it is manifest, as shown in the Slack case, that the Legislature intended to make the law applicable to all territory where prohibition was in force, there being no inhibition in the Constitution, we will give force and effect to that intent. According to our view, the Constitution says that the Legislature shall pass a law that the people may from time to time pass on the question of whether or not the sale of intoxicating liquors shall be prohibited, and when they declare that it shall be prohibited it is the duty of the .Legislature to pass laws to make their will effective. If there were people who were trying by illegal means to prevent the sale, after the people of a given territory had voted that it should be sold, we would deem it the duty of the Legislature to pass laws to protect those lawfully engaged in the business.

The contention is made that the people might not have voted in favor of the law if they had known the Legislature would pass laws to enforce it. We have not that opinion of our citizenship. As far as our observation goes, all good citizens want to see the law enforced while it is the law. They may disagree as to the wisdom of adopting the law, but all desire it respected and obeyed as long as it is the law, except the criminal who violates it. There is a mode by which all laws can be repealed, if not desired by the people affected thereby, but we can not agree that the Legislature is powerless to remedy evils as they arise. There is but one restraining power—the Constitution—and so long as it does not inhibit the Legislature from so doing we do not think a construction of the court should do so. Judge Davidson, in his dissenting opinion in the Fitch case, supra, holds there is no constitutional question involved.

The only constitutional provision in regard to this matter is section 20 of article 16: "The Legislature shall at its first session enact a law whereby the qualified voters of any county, justice precinct, city (or subdivision of a county as may be designated by the Commission-

ers' Court) may by a majority vote determine from time to time whether the sale of intoxicating liquors shall be prohibited within the prescribed limits."

In obedience to that command the Legislature has, in chapter LXIX of the Revised Civil Statutes, passed a law whereby the people of the named territory may pass on this question. The Legislature has not undertaken to put the law in force in any territory, but has only passed a law whereby the qualified voters may determine this question, and may have an election every two years. This is a part of the civil code of this State, and has nothing to do with the enforcement of the law after it has been adopted. It is within the contemplation of this section of the Constitution that if the people of any given territory, by a majority vote, determine that the sale of intoxicating liquors shall be prohibited in that territory, the Legislature will pass laws to see that the will of the people thus expressed is enforced. But the Penal Code forms no part of the law (Civil Statutes) whereby the people determine whether or not the sale shall be prohibited, and if the Legislature pass laws for the enforcement of the law where it has been adopted by the vote of the people, it puts the law in force in no territory where they had not voted for it, but only enforces it in that territory where local option has been adopted in the way provided by the Constitution. The contention made by some, that for the Legislature to pass laws for the enforcement of the law in that territory where the people have, by a majority vote, already adopted it, is the Legislature adopting the law, is too absurd to be considered. The Legislature has not by any law passed, or sought to enact, put the prohibition law in force in any territory in this State, either under the law making it a felony to pursue the occupation of selling liquor where the local option has been enacted, or may thereafter be enacted, or by any other law, but by the passage of suitable laws it has sought to enforce this provision of the Constitution where the people, in the exercise of the right guaranteed to them by the Constitution of this State, adopted the local option law and prohibited the sale of intoxicating liquors. The Constitution of this State not only does not inhibit the Legislature from the passage of such laws, but it is virtually commanded that they do so. To say that the Legislature should pass a law whereby the people might determine whether the sale should be prohibited, and if they, by a majority vote, determine that the sale should be prohibited, then for the Legislature to sit with "folded hands" and say, "we have complied with the Constitution in giving the people a right to determine this question, and it is not our duty to pass any law whereby their will can be enforced," would be an absurdity that no thinking man will sanction, as we see it. First, the people of any territory must determine the question of whether they desire its sale prohibited, and with this the Legislature has no concern, except to pass laws whereby their will may be finally determined. If in the exercise of their wisdom the people of a named territory see proper to put the local option

law in force, and thus prohibit the sale of intoxicants, then it becomes the duty of the Legislature, the governor, the courts and all their officers, to see that their will is respected and enforced, and the Constitution does not inhibit it, but commands that they do so, and the Legislature should pass all laws necessary to the attainment of this end, the courts uphold the laws so passed if not in violation of the Constitution, and the officers of the law to enforce them. See Slack v. State, decided at this term of court; Fitch v. State, 58 Texas Crim. Rep., 356, 127 S. W., 1040, for further discussion of this question.

The appellant complains of the charge of the court in that it gave the jury no rule by which to determine whether or not local option was in force in that county. The court instructed the jury that the law was in force in that county, and this court has repeatedly held that where the orders are introduced in evidence and where no issue has been raised as to the regularity of the election (as was not done in this case) the court should charge that local option was in force. Keller v. State, 46 Texas Cr. Rep., 588; Teague v. State, 51 Texas Crim. Rep., 526; Cordona v. State, 53 Texas Crim. Rep., 619.

The appellant contends that the court erred in his charge in defining occupation and business. The court instructed the jury: "You are further instructed that under the law, in order to constitute or engage in or pursue the occupation and business of selling intoxicating liquors, it is necessary for the State to prove beyond a reasonable doubt that the defendant, Geo. Dozier, unlawfully engaged in and followed the occupation and business of selling intoxicating liquors in Red River County, Texas, at the time alleged in the indictment, and that he has made at least as many as two or more sales of intoxicating liquors in Red River County and at the time alleged in the indictment and during the month of May, 1910, and that said sales (if any) must have been made prior to the 10th day of June, 1910 (which is the date of filing the indictment herein), and unless you do so believe beyond a reasonable doubt, you will acquit the defendant and say by your verdict, 'Not guilty.' You are further instructed that by the terms 'occupation and business,' as used herein, is meant vocation, calling, trade, the business which one engages in to procure a living or obtain wealth." In this it will be seen that the court instructed the jury that they must believe beyond a reasonable doubt that, unless appellant pursued the occupation or business, they would acquit him. Appellant requested no special instruction, and if this charge was not as full on this question as he desired it was his duty to request additional instructions. In Sheckles v. State, 9 Texas Crim. App., 326, it is held:

"When the judge has charged the law applicable to the case in distinct and comprehensive terms, this court will not reverse the case simply because the charge might have been fuller and more pertinent, especially when the defects in those particulars (if any) have not attempted to be corrected by the defendant through additional instructions." See also Browning v. State, 1 Texas Crim. App., 96; Mc-

Mahon v. State, 1 Texas Crim. App., 103; Foster v. State, 1 Texas Crim. App., 363; Moore v. State, 15 Texas Crim. App., 1; O'Connell v. State, 18 Texas, 343; Greenwood v. State, 35 Texas, 587; Powell v. State, 44 Texas, 63; Texas & Pac. Ry. Co. v. Gay, 86 Texas, 571.

There is no evidence in the record that either of the ten sales proved to have been made by appellant was for sacramental purposes or on the prescription of a physician. Therefore it was not the duty of, nor proper for, the court to have submitted this issue in his charge. In the case of Edwards v. The State, 38 S. W. Rep., 779, Judge Davidson, speaking for the court, says: "Bill of exception No. 3 was reserved by the appellant to the charge of the court that appellant must have sold the intoxicating liquor without a written prescription of a regular practicing physician. There was no issue in this case of that sort. The question of a prescription vel non is not suggested by the testimony. There is no pretense anywhere in this record that defendant sold this liquor under prescription, or that the purchaser had a prescription," and the holding is that where, on trial for an illegal sale of intoxicating liquors, there was no issue that it was sold on prescription of a physician, an instruction on that issue was properly refused. There was no evidence in this case on which to base such a charge, and in all the holdings of this court it has been held error to submit an issue not made by the evidence. Nite v. State, 41 Texas Crim. Rep., 340, 54 S. W., 763; Wilson v. State, 55 S. W., 489; Bell v. State, 56 S. W., 913; Mancha v. State, 57 Texas Crim. Rep., 332; Thomas v. State, 34 Texas Crim. Rep., 482, and authorities there cited. In the case of Wolfforth v. State, 31 Texas Crim. Rep., 387, Judge Davidson, speaking for the court, says: "The court did not err in refusing the special requested instructions submitting the theory of self-defense from the standpoint that the deceased made the attack on defendant. There is no evidence in the record to justify such charge."

The court under the evidence instructed the jury that local option was in force in that county, and before they should convict him they must find he made illegal sales of intoxicating liquors in said county and was pursuing the business or occupation of selling intoxicating liquors in violation of the law, and if they did not so find beyond a reasonable doubt to acquit him. This submitted every issue raised by the evidence.

In the case of Slack v. State, decided at this term, we held that it is not necessary to negative the exceptions under this article of the statute, but if it was necessary to negative exceptions in the indictment the exceptions would be matters of defense, and peculiarly within the knowledge of the defendant, and it would be incumbent on him to make proof thereof. Mr. Greenleaf, in his work on Evidence, says (section 79): "Where the subject matter of a negative averment lies peculiarly within the knowledge of the other party, the averment is taken as true, unless disproved by that party. Such is the case in civil or criminal prosecutions for a penalty for doing an act which

the statutes do not permit to be done by any persons except those duly licensed therefor, as for selling liquors, exercising a trade, a profession, and the like. Here the party, if licensed, can immediately know it, without the least inconvenience."

Mr. Rice, in his work on Evidence, says (section 262) : "Where the fact is peculiarly within the knowledge of one party rather than the other, the burden of proof may be imposed on the one having the means of proof," citing State v. Arnold, 35 N. C., 184; Pounders v. State, 37 Ark., 399; State v! Camden, 48 N. J. L., 89; Wheat v. State, 6 Mo., 455; Williams v. State, 35 Ark., 430; People v. Nyce, 34 Hun, 298; State v. Higgins, 13 R. C., 330; State v. Keggon, 55 N. H., 19; Com. v. Locke, 114 Mass., 288; Abbott's Trial Brief, sections 739-740.

If the defendant in this case had made sales of intoxicating liquors on prescription he would have known it, and could have produced the prescriptions and proved them by the physician who gave them, and so it would be in every case of this character.

Article 52 of our Penal Code provides: "On the trial of any criminal action, when the facts have been proved which constitute the offense, it devolves upon the accused to establish the facts or circumstances on which he relies to excuse or justify the prohibited act or omission."

The offense prohibited for which defendant was being prosecuted was pursuing the business or occupation of selling intoxicating liquor in a county where the sale had been prohibited, and if he had any excuse or justification for the act it devolved upon him to show it. Caldwell v. State, 5 Texas, 18; Ashcroft v. State, 32 Texas, 108; Leonard v. State, 7 Texas Crim. App., 417; Reynolds v. State, 32 Texas Crim. Rep., 36; Jones v. State, 32 Texas Crim. Rep., 108; Stilly v. State, 27 Texas Crim. App., 445; Stoneham v. State, 3 Texas Crim. App., 594; Willis v. State, 24 Texas Crim. App., 584; Kuhn v. State, 34 Texas Crim. Rep., 85; Crow v. State, 41 Texas, 468, and the authorities cited in case of Bell v. State, decided at this term of court. We have an offense against selling liquor to minors. Article 400 P. C. reads: "Any person who shall knowingly sell or give, or cause to be sold or given, any spirituous, vinous or intoxicating liquor to any other person under the age of twenty-one years, without the written consent of the parent or guardian of such minor, or some one standing in their place or stead, shall be fined not less than twenty-five nor more than one hundred dollars."

It will be noticed that the exception, "without the consent of the parent or guardian," is in the body of the act, and Judge Hurt, who is recognized as one of the ablest lawyers who ever presided over this court, in Reynolds v. State, 32 Texas Crim. Rep., 37, held: "The second assignment presents the question, Must the State prove the accused did not have the written order from the parent or guardian, or some one authorized to give such order, or must the accused produce

or establish the fact that he had such order? After mature reflection we are of opinion that the burden is on the accused." This opinion has never been limited nor criticised, but followed in all our decisions from that day until now, and in Hannaman v. State, 33 S. W., 538, Judge Hurt again says: "This is a conviction for selling beer to a minor. It was not necessary for the State to introduce the mother of the minor, to prove by her that she had not given her consent. When the State proves the sale, and the party to whom the beer was sold is a minor, the burden is upon the defendant to introduce in evidence the written consent or permission of the parent or guardian. The court's charge was correct in every particular." In that case, there being no evidence that the defendant had or did not have the written consent, the court did not submit that issue to the jury, and Judge Hurt says the court was correct.

If the words "except as permitted by law," being in the body of this act, becomes a part of the "enacting clause," then the words "without the consent of the parent or guardian" is in the body of the act above quoted, and must also be considered a part of the enacting clause.

This law has been most vigorously assailed. It was first contended that the Legislature was without power to put it in effect in counties where prohibition was in force; this being decided adversely to the contention of defendants, it was then asserted that all matters that would excuse or justify must be negatived in the indictment. Upon this court holding otherwise, it was asserted that proof must be offered on behalf of the State that the person making the sale did not sell on prescription or make a sale for sacramental purposes. This court having held that if he sold on prescription the prescription was in his possession, and if he relied on this he must produce it, the contention is now made that if there is no proof on this question in evidence, yet the court must submit the issue to the jury, contrary to all the decisions of this court. We have given all the questions careful thought and study. We have not only read the decisions of our own State, but have investigated and read a number of text books, and the decisions of courts of other States, and in the case of Slack v. State, Bell v. State, and in this case, will be found our views on all these questions, and discussion of issues and questions not involved in these cases will not cause us to grow satirical, nor be led astray from a discussion of the rules of law not involved in them.

Judgment affirmed.

*Affirmed.*

DAVIDSON, PRESIDING JUDGE (dissenting).—With reference to the proposition involved in the Fitch case I wrote a few views why I dissented in that case, and reached the conclusion that the statute with reference to pursuing the business of selling intoxicants in local option territory could not be made operative until after a vote of the people

putting into operation the local option law. The majority of the court differed with me rather widely, and laid down the proposition generally stated, that the Legislature could make the law operative without reference to a vote of the people. That question is urged in this case.

It may be unnecessary to pursue that thought further. The profession will fully understand my views from the dissenting opinion in the Fitch case and Judge Ramsey's views in the Lewis case. I believed then, and believe yet, that Judge Ramsey's reasoning in the Lewis case is correct, and that it has not been answered in any manner by the reasoning in the Fitch case and subsequent cases. I would not mention that matter in this dissent but for the following statement found in the majority opinion, which is as follows:

"The contention is made that the people might not have voted in favor of the law if they had known the Legislature would pass laws to enforce it. We have not that opinion of our citizenship. As far as our observation goes, all good citizens want to see the law enforced while it is the law. They may disagree as to the wisdom of adopting the law, but all desire it respected and obeyed as long as it is the law, except the criminal who violates it. There is a mode by which all laws can be repealed, if not desired by the people affected thereby, but we can not agree that the Legislature is powerless to remedy evils as they arise. There is but one restraining power—the Constitution—and so long as it does not inhibit the Legislature from so doing, we do not think a construction of the court should do so."

I approve most heartily the last sentence quoted, but I differ with my brethren in the conclusion reached. The Constitution is the restraining power, and by virtue of article 16, section 20, is effectually restraining in this matter. It dominates the Legislature; it created that body. It dominates this court and circumscribes not only the power of the Legislature but of this court, as well as the executive department. I agree further, that as long as the Constitution does not inhibit legislation, the court should not undertake to put a limit upon the Legislature. But the difference between my brethren and myself is this: As I understand the Constitution, it does inhibit the Legislature from putting local option laws into effect in any territory in Texas, and that there is no manner or means by which that can be done except by a vote of the people. The Constitution expressly so provides wherein it says the Legislature shall at its first session pass laws whereby the people may from time to time vote to prohibit the sale of intoxicating liquors. This is not only restrictive and restraining, but is exclusive. I do not care to go further into that field of discussion. It has been settled by so many decisions that it would seem all sufficiently plain that the matter ought to rest where the Constitution places it.

I believe my brethren do not state appellant's contention fairly when they say "that the people might not have voted in favor of the law if they had known the Legislature would pass laws to enforce it." The

contention of appellant is that the people might not have voted for the local option law if this statute had been in force at the time they voted local option into existence in Red River County. Appellant does not make any contention that the people might not have voted for the law if they had thought the Legislature would make laws to enforce it. They voted at the time they did vote upon a different law which the Legislature had provided, and not only so, but all necessary remedies for enforcing it. The law under consideration was not in existence and they did not have the opportunity to vote upon it. The contention of appellant is that, inasmuch as they did not vote for it, it being a local option law, the Legislature could not force it upon them; that the local option laws can not be put in force in any territory in Texas except by a vote of the people. Here the Legislature puts it in force without reference to that vote. It is true that all good citizens want to see the law enforced while it is the law, but the good citizens do not want to see a man punished until it is the law. I would say, as far as my observation goes with reference to the good citizenship of Texas, they do not believe in punishing men until there is a law authorizing such punishment and that law has been put properly in force. Nor do I believe the good citizenship of Texas would want to punish any man where there is no law justifying it. The good citizenship of Texas and the bar and bench have always understood, since the Constitution of 1876 was ordained and put into operation, that the only way of putting local option into effect was by direct vote of the people of the territory to be affected by it, and that the Legislature had no authority to impose upon them a law they did not want. The good citizenship of Red River County have never had an opportunity, so far as this record shows, to vote upon the law under which appellant has been convicted. I do not care to follow this subject any further.

With reference to the burden of proof, presumption of innocence and reasonable doubt, and matters of that character that are involved in this appeal and urged by appellant, I might write at length, but having written pretty fully in Bell v. State, decided at the present term, I refer to that opinion for discussion of those questions. And I would not have written a dissent in this case, but would simply have relied upon my dissent in other cases, except for the fact that my brethren are holding that a charge quoted in the majority opinion is correct exposition of the law. The question involved in the charge is not discussed in my dissent in the Bell case, supra. I do not care to repeat the charge. It will be found in the majority opinion. The charge falls far short of submitting the issues arising under the law and the facts. Under that charge given, if the jury should believe that appellant followed the business of selling intoxicants, and made two sales, he would be guilty. The use of the word "unlawfully" in the charge adds nothing to the validity or correctness of the charge. Appellant could sell "unlawfully" as many as two times, or oftener, and yet be entirely innocent of violating the statute under which he

was indicted and convicted. That statute, among other ingredients or elements, requires that the sale must occur in a manner not permitted by law. There is no attempt on the part of the court to tell the jury what "unlawfully" means, or what it takes to constitute a violation of the law. In order to properly charge under that statute the jury ought to be informed, and the law requires that they should be instructed, in regard to that phase of the statute which permits a person to sell and under which he would not be guilty. The question may be asked, what does "unlawfully" mean, and what would the jury understand by that word standing alone and unexplained? It might readily be answered, nothing. They are not informed what it takes to constitute selling "unlawfully" or in pursuing the business "unlawfully;" nor were they given any criterion or legal rule by which they could understand what it takes to constitute such unlawful selling. The statutes of our State authorize the business of selling intoxicants in local option territory. Acts 1897, page 223. Under the terms of that Act parties may by paying the required tax and, securing the license, and giving bond, sell intoxicants under the terms prescribed in the statute. There are other ways by which such selling may be lawfully done. So far as this record is concerned, appellant may have had his license to follow the business. The evidence throws no light upon this subject at all. There is not a word in the record to the contrary. In fact the evidence is silent as to whether he did or did not have a license or authority to sell. It is true, the record does disclose that he was not selling in a house, but that would be a different matter. He might have had license and the place designated in the license as required by law, and yet sell away from the place indicated. He might be violating another phase of the law, but if so it was a violation of the law, and the jury were not informed in regard to that matter. The statute under which appellant is indicted, as do all penal statutes, requires evidence to be introduced by the State in order to secure a conviction. This evidence must be cogent enough to overcome the presumption of innocence and reasonable doubt and to fully meet the statutory definition. The accused is not required to furnish evidence against himself to the end that the State may convict him. To require of him, as is done in this case, to furnish this evidence, places the burden of proof on him to prove his innocence, or on the other hand, it requires him to furnish to the State evidence with which to make its case as a predicate for conviction. In either event the burden is shifted from the State to his shoulders, and he is forced either to prove his innocence or furnish the State evidence to convict. I know of no statute under which the accused must prove his innocence in order to avoid a conviction, or where the failure to do so will afford justification for his conviction. An inspection of the charge demonstrates an utter failure to set forth any rule or criterion by which the jury may be able to ascertain what the court meant by the use of the term "unlawfully." The charge in this respect is as indefinite as can well be

framed in the English language. Definiteness and particularity in charging the jury in regard to the law of the case applies to every other offense in Texas under the law except sales of intoxicants. I do not understand why violations of this statute should be an exception to giving the jury a legal and proper charge. This court has at all times reversed on charges in other character of cases similar to that given in this case, for want of certainty in defining the offense and the law pertaining thereto in the charge. This rule is without dissent in murder cases. Clark v. State, 51 Texas Crim. Rep., 519; Smith v. State, 57 Texas Crim. Rep., 585; Best v. State, 58 Texas Crim. Rep., 327; Patton v. State, decided at the present term of court, are murder cases.

In the above cited cases the charge was in regard to murder in the second degree. Illustrative of the proposition here asserted, reference will be had to the charge on murder in the second degree given in the Clark case, supra, which is as follows:

"If you believe from the evidence beyond a reasonable doubt that the defendant . . . with a deadly weapon did *unlawfully* shoot and thereby kill Alonzo Porter, as charged in the indictment, you will find him guilty of murder in the second degree," etc.

That case was reversed because the charge did not inform the jury that the killing must be upon implied malice aforethought, the term "unlawfully" not being sufficient for that purpose. It was held that the charge was as applicable to manslaughter as to murder in the second degree. In other words, it may be stated that all of those cases were reversed because the law was not sufficiently defined in the instructions given the jury. All the cases support the Clark case, and this without exception. But that was a murder conviction, this is not. This conviction was for selling intoxicants in local option territory. The cases cited were reversed on a similar charge to that given in this case, and which affords here the basis of affirmance. "Unlawfully" carrying a pistol is not sufficient either in the indictment, the charge or the recognizance, by all the authorities. Other instances could be given, but these are deemed sufficiently illustrative. I do not believe such discrimination ought to exist, and that such discrimination is not justified by law. If the charge is not the law in one case or in regard to one offense, it ought not to be in the other offense. The accused ought legally to have the same fair trial in one instance as in the other. If "unlawfully" shooting a man with a pistol is not a sufficient charge in regard to malicious homicide, it might be seriously asked, How can "unlawfully" selling intoxicants be a sufficient instruction in regard to selling intoxicants under a statute which sufficiently defines the mode and manner of selling the same? The divergence in such reasoning is too abtrusely mysterious to be entertained. The accused should have and be accorded the same fair and legal trial in one case as in the other.

The cause ought to be reversed and the accused given a fair and legal trial, as he would be accorded in other cases. I enter my dissent.